FILED
JUN - 9 2011
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GEORGE PATTON NELSON, III, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:08cv603-HEH
)
CATHY HILL, *et al.*, )
)
Defendants. )

**MEMORANDUM OPINION**
**(Granting Motion For Summary Judgment)**

George Patton Nelson, a former Virginia inmate proceeding *in forma pauperis*, filed this civil rights action alleging that he was denied adequate medical care while confined in the Richmond City Jail ("the Jail"). In his First Amended Complaint, Plaintiff named Cathy Hill, C.T. Woody, and Cheryl Robinson as defendants. By Memorandum Opinion and Order entered on March 17, 2010, the Court dismissed Plaintiff's claims against Defendants Hill and Woody. The action is proceeding on Nelson's Second Amended Complaint, wherein Nelson added Alonzo Pruitt as a defendant. Nelson demands monetary damages and injunctive relief. The matter is before the Court on the motion for summary judgment filed by Robinson and Pruitt, and on Nelson's requests for injunctive relief.

**I. Standard for Summary Judgment**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). "The Court need only consider the cited material, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of their motion for summary judgment, Robinson and Pruitt submitted sworn declarations and business records from the Jail. In opposition to the motion for

summary judgment, Nelson relies upon his Second Amended Complaint, which is sworn to under penalty of perjury. Nelson also relies on a series of sworn statements that he calls medical logs wherein he describes his medical condition and care while at the Jail. (Second. Am. Compl. Exs. 12, 13.)[1] Additionally, in his Opposition to Defendants' Motion for Summary Judgment, Nelson references the copies of correspondence, grievance material, medical records, and articles from the internet regarding the Jail and Methicillin Resistant Staphylococcus Aureus, which he attached to his Second Amended Complaint.[2] In light of the foregoing submissions, the following relevant facts are established for purposes of the motion for summary judgment.[3]

## II. Summary of Pertinent Facts

Nelson was incarcerated in the Jail between August 15, 2008 and September 12, 2008.[4] (Second Am. Compl. ¶ 4.) Nelson had an "open wound on his right side." (*Id.* ¶ 6(b).) Nelson repeatedly asked Nurse Hill to examine and sanitize the wound. (*Id.*)

---

[1] The Court employs the exhibit numbers assigned by the Court's CM/ECF system for the attachments to Nelson's Second Amended Complaint.

[2] Of course, Nelson cannot rely upon the unsworn factual statement in his brief in opposition to Defendants' Motion for Summary Judgment. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

[3] By Memorandum Order entered on March 21, 2011, the Court granted a motion for an extension of time filed by Nelson and stated his response received on March 10, 2011 would be deemed timely. Accordingly, the Court will deny Defendants' Motion to Strike Nelson's March 10, 2011 response to the motion for summary judgment.

[4] At all times relevant to the action, Defendant Robinson was the Director of the Medical Services Department at the Jail. (Defs.' Mem. Supp. Summ. J. Ex. 2 ("Robinson Decl.") ¶ 1.) Defendant Pruitt was the Chaplain and Undersheriff of the Jail. (Defs.' Mem. Supp. Summ. J. Ex. 3 ("Pruitt Decl.") ¶ 1.)

Nurse Hill refused to do so and directed Nelson to submit "'Medical Request Forms.'" (*Id.*) Nelson submitted more than six medical request forms "describing his open wound and possible infection." (*Id.* ¶ 6(a).)

On Saturday, August 30, 2008, at 1:00 a.m., Nelson's "MRSA infection the size of two or three golf balls bursts or discharges blood and puss from the plaintiff's right side for a period of two or more hours." (*Id.* ¶ 6(c).) Later that morning, Nelson submitted an inmate grievance form describing the incident and wrote Defendant Pruitt a letter, wherein Nelson requested medical care for his infection. (*Id.* ¶ 6(d); *id.* Exs. 6–7.)

On August 31, 2008, Nurse Hill examined the infected area on Nelson's side. (*Id.* ¶ 6(e).) Nurse Hill placed a band-aid over the infected area. (*Id.*)[5] On the night of August 31, 2008, Nelson's wound discharged material for a period of eight hours. (*Id.* ¶ 6(f).) Nelson attempted to clean his wound in the showers, but the showers only discharged extremely hot water. (*Id.*; Defs.' Mem. Supp. Summ. J. Ex. 1 Ex. B.) Nelson wrote a second letter to Defendant Pruitt complaining about his infection. (Second Am. Compl. Ex. 8.) Nelson then submitted a grievance wherein he complained that the showers on his tier were broken, in that they only discharged scalding hot water. (Defs.' Mem. Supp. Summ. J. Ex.1 Ex. B.)

---

[5] In a letter written to Defendant Pruitt, Nelson indicates that on August 30, 2008, Nurse Hill treated the infected area with peroxide and placed a band-aid over the area. (Second Am. Compl. Ex. 8, at 1.)

4

On Monday, September 1, 2008, just after midnight, Nelson's boil burst again, discharging blood and puss. (Second Am. Compl. ¶ 6(h).) Nelson attempted to clean the wound to the best of his ability in the shower. (*Id.*)

On Tuesday, September 2, 2008, Nelson's grievances concerning the shower and his infection were received by the grievance coordinator at the Jail.[6] (Defs.' Mem. Supp. Summ. J. Ex.1 Exs. A & B.) The grievance concerning Nelson's infection was addressed by Robert Cushionberry, the Assistant Manager of the Medical Services Department at the Jail. (Defs.' Mem. Supp. Mot. Summ. J. Ex. 4 ¶¶ 1, 3, 4.) Cushionberry placed Nelson on the list to be seen by Dr. Furman on September 5, 2008. (*Id.* ¶ 4; Robinson Decl. ¶¶ 4, 5; Robinson Decl. Ex. B.)[7] Defendant Robinson met with Nelson and told him that a doctor would see him by Friday, September 5, 2005.[8] (Second Am. Compl. ¶ 6(i).)

---

[6] In his Second Amended Complaint, Nelson incorrectly refers to Defendant Robinson as the grievance coordinator. (Second Am. Compl. ¶ 6(i).)

[7] Dr. Furman was not employed by the Jail. (Robinson Decl. ¶ 9.) Dr. Furman was self-employed and treated inmates at the Jail pursuant to a services agreement with the Richmond City Sheriff's Department. (*Id.*) Although the Jail Inmate handbook states that "[t]he doctor's hours are Monday through Friday" (Second Am. Compl. Ex. 1.), according to Nelson, Dr. Furman only was available on Tuesdays and Fridays. (*Id.* Ex. 12, at 2.)

[8] Defendant Robinson disputes meeting with Nelson on September 2, 2008 or having any knowledge that he had a boil. (Robinson Aff. ¶¶ 2, 4, 6.) Nevertheless, for purposes of the motion for summary judgment, the Court must accept Nelson's sworn statement that he met with Robinson on that date. Nelson, however, fails to direct the Court to any evidence regarding what he told her on that date or what she observed of his medical condition.

After Defendant Pruitt received Nelson's letter, he went to see Nelson about his boil. (Pruitt Aff. ¶ 3.) Upon examining the boil, Defendant Pruitt "then asked a member of the Jail's nursing staff to see Nelson regarding his boil." (*Id.*) "Shortly thereafter, [Defendant Pruitt] received a call from someone in the Jail's medical department telling [him] that Nelson's boil had been attended to. [Defendant Pruitt] understood this to mean that Nelson at least had been put on the doctor's list." (*Id.* ¶ 4.)

Nelson, however, was not seen by Dr. Furman on Friday, September 5, 2008. (Second Am. Compl. ¶ 6(j).) Nevertheless, Nelson's condition appeared to have improved. In his medical log for September 5, 2008, Nelson swears that "[t]he 'core' or 'head' of [his] infection is still located in the same place on my right side . . . . For the time being the discharge is minimal . . . ." (*Id.* at Ex. 9.) In another entry in his September 5, 2008 medical log, Robinson noted, "Although my 'Grievance Response Form' was answered no action was taken on Friday . . . 9/5/08. I asked the Chaplain/Undersheriff [Pruitt] to call medical for me." (*Id.*)[9] In his medical log for Monday, September 8, 2008, Nelson noted that all that remained of his boil was "a silver dollar-sized 'hardened and discolored area' on [his] right side." (*Id.* at Ex. 13.)

"After September 5, 2008, Mr. Nelson did not notify [Defendant Robinson] or anyone else in the [Jail] medical department that he . . . still had not received adequate

---

[9] After he received the phone call informing him that Nelson's boil had been addressed, Defendant Pruitt does "not recall Nelson or anyone else saying anything to [him] about Nelson's boil until [he] heard about [the] lawsuit." (Pruitt Aff. ¶ 5.)

medical treatment." (Robinson Decl. ¶ 7.) Nelson did not file any grievances regarding the lack of an appointment with Dr. Furman on September 5, 2008. (Defs.' Mem. Supp. Summ. J. Ex. 1 ¶ 2.)

On September 12, 2008, Nelson was released from the Jail. (Second Am. Compl. ¶ 6(k).) Upon his release from the Jail, Nelson went to the emergency room at the Medical College of Virginia ("MCV"). (*Id.*) Nelson was provided with antibiotics for his MRSA infection. (*Id.*)[10] When Nelson continued to experience discharge from his wound, he returned to MCV on September 15, 2008. (*Id.*) Nelson was provided with a stronger antibiotic and pain medication. (*Id.*)

### III. Analysis

To survive summary judgment on an Eighth Amendment[11] claim, an inmate must demonstrate: (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Setter*, 501 U.S. 294, 298 (1991)). Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders

---

[10] There is no indication that Nelson received pain medication on September 12, 2008.

[11] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).

Under the subjective prong, the inmate must demonstrate that the defendant was deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06). A plaintiff can meet his burden with respect to both elements "in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). This demanding standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

Evidence that a defendant recklessly refused or delayed in providing a plaintiff with access to medical professionals with sufficient expertise to evaluate and treat a

8

particular condition may support an inference of deliberate indifference. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277–79 (10th Cir. 2001). Nevertheless, the Supreme Court has admonished that "an official 'who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted.'" *Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 844 (alterations in original)). This is so because "an official who responds reasonably to a known risk has not 'disregard[ed] an excessive risk to inmate health or safety.'" *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 837). Defendants do not dispute that Nelson's infection or boil was a serious medical need. Defendants, however, contend that Nelson cannot demonstrate that they acted with deliberate indifference, because they responded reasonably to that need of which they knew. *See Brown*, 240 F.3d at 389–90.

### A. Defendant Robinson

The record reflects that Defendant Robinson spoke with Nelson on September 2, 2008 (*see* Second Am. Compl. ¶ 6(i)), and she believed Nelson would be examined by a doctor on Friday, September 5, 2008. (*Id.*) Nelson fails to present evidence of the content of that conversation beyond the fact that Defendant Robinson knew Nelson was on the doctor's list for September 5, 2008. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" (quoting *Farmer*, 511 U.S. at

9

837)). At best, the record reflects that Defendant Robinson had reviewed the doctor's list for September 5, 2008, which simply describes Nelson's condition as a boil. (Robinson Decl. Ex. B.)

Nelson insists that simply placing him on a list to be seen by the doctor in a few days was not a reasonable response his medical need. Nelson, however, fails to direct the Court to evidence that reflects that Defendant Robinson knew that the failure to secure immediate medical attention was "'*insufficient*' to mitigate the risk of harm to [Nelson] arising from his medical needs." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Parrish*, 372 F.3d at 303); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (affirming dismissal for failure to state a claim because six-day wait to see doctor for an infected cyst was not unreasonable). Nelson fails to direct the Court to evidence that indicates Defendant Robinson was aware that Nelson's condition was deteriorating or that the delay in medical care would cause him substantial pain. *Compare Sealock v. Colorado*, 218 F.3d 1205, 1211–12 (10th Cir. 2000) (reversing grant of summary judgment where physician assistant failed to summon further medical assistance despite knowledge of inmate's chest pain), *with Guiden v. Wilson*, 344 F. App'x 980, 981 (5th Cir 2009) (affirming grant to summary judgment to prison officials who declined to provide emergency medical attention for an inmate's infected boil).

Moreover, Nelson has not presented any evidence which demonstrates that Defendant Robinson was aware, prior to the filing of this lawsuit, that Nelson had not

been examined by Dr. Furman on September 5, 2008. Any omissions by Defendant Robinson in failing to secure immediate medical care for Nelson on September 5, 2008, at most amounts to negligence. Accordingly, Nelson's claim that Defendant Robinson acted with deliberate indifference to his serious medical needs will be dismissed.

### B. Defendant Pruitt

Nelson has failed to introduce evidence from which a reasonable jury could conclude that Defendant Pruitt acted with deliberate indifference. When Defendant Pruitt first heard of Nelson's boil/infection, the infected area was discharging fluid. Defendant Pruitt then examined Nelson and requested that a nurse examine Nelson. Such actions reflect attentiveness, rather than indifference to Nelson's medical needs. Moreover, Defendant Pruitt was entitled to rely upon the assurances of the medical personnel that they would provide Nelson with appropriate care for his boil. *Iko*, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (omission in original) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))). Accordingly, Nelson fails to demonstrate that Defendant Pruitt acted with a sufficiently culpable state of mind prior to September 5, 2008.

Although sometime on September 5, 2008, Nelson asked Defendant Pruitt to contact the medical department (Second Am. Compl. Ex. 9), Nelson does not describe the content of that conversation or suggest that he alerted Defendant Pruitt that he was in

acute distress. *See Vance*, 97 F.3d at 993. Moreover, Nelson's own account of his condition indicates that by that date his condition had significantly improved. Nelson simply fails to produce evidence which indicates that after September 5, 2008, Defendant Pruitt was aware of a substantial risk of serious harm to Nelson's person. *See Jackson v. Douglas*, 270 F. App'x 462, 463 (8th Cir. 2008) (observing that "to show deliberate indifference, plaintiff must submit evidence that, inter alia, defendants ignored acute or escalating condition, given type of injury at issue" (citing *Sherrer v. Stephens*, 50 F.3d 496, 496-97 (8th Cir. 1994))); *Stepnay v. Goff*, 164 F. App'x 767, 770 (10th Cir. 2006). Accordingly, Nelson's claim that Defendant Pruitt was deliberately indifferent to his medical needs will be dismissed.

### C. Nelson's Requests for Injunctive Relief

In his Second Amend Complaint, Nelson requests injunctive relief with respect to the conditions at the Richmond City Jail. In September of 2010, Nelson was reincarcerated in the Jail. Thereafter, Nelson filed a motion for a preliminary injunction with respect to the conditions at the Jail. (Dk. No. 93.) On January 28, 2011, the Court received from Nelson two motions requesting his transfer to the Botetourt County Jail. (Dk. Nos. 109, 112.)

On April 6, 2011, the Court received from Nelson notice that he had been released from the Richmond City Jail and transferred to the Botetourt County Jail. Nelson also

filed a motion for leave to file additional evidence in support of his motion for a preliminary injunctive relief with respect to the Richmond City Jail. (Dk. No. 127.) In light of Nelson's transfer to the Botetourt County Jail, his January 28, 2011 motions requesting a transfer to that jail (Dk. Nos. 109, 112) will be denied as moot.

Furthermore, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa*, 507 F.3d at 287. Accordingly, Nelson's motion for injunctive relief with respect to the Richmond City Jail (Dk. No. 93) and his motion for leave to file additional evidence in support of that preliminary injunction (Dk. No. 127) will be denied as moot.

The Motion for Summary Judgment (Dk. No. 98) will be granted and the action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

*N* /s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: June 9, 2011
Richmond, Virginia